# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DONALD J. GEBHART,**

    **Petitioner,**

    **v.**                                                                    Case No. 22-CV-54-SCD

**CHERYL EPLETT,**
   *Warden, Oshkosh Correctional Institution,*

    **Respondent.**

---

## DECISION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS

---

Donald Gebhart was arrested in a Waukesha parking lot after using a dating application to arrange a sexual encounter with a police detective who posed as a fifteen-year-old boy. He handed over his cell phone and later gave police permission to search through it. Prior to trial, Gebhart moved to suppress evidence recovered from his phone—the messages between him and the undercover detective—arguing that the police violated his *Miranda*[1] rights and that his consent to the search was not voluntary. The trial court ultimately denied the motion, and at trial the prosecution introduced screenshots of the DMs taken from both Gebhart's and the detective's phones. A jury convicted Gebhart of using a computer to facilitate a child sex crime. On appeal, the state appellate court determined that any error in admitting the evidence found on Gebhart's phone was harmless, and the state supreme court declined further review.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Gebhart now seeks relief under 28 U.S.C. § 2254, claiming that he is in custody in violation of his Fourth Amendment right to be free from an unreasonable search. Because the state courts afforded Gebhart a full and fair opportunity to litigate his Fourth Amendment claim, I am precluded from reviewing the merits of that claim on federal habeas review. Even if I did reach the merits, Gebhart would not be entitled to relief under § 2254, as the admission of the evidence found on his phone did not actually prejudice him. I will therefore deny the petition and dismiss this action.

**BACKGROUND**

In June 2016, Waukesha police conducted an undercover sting operation to identify and apprehend individuals using online dating applications to solicit sex from minors. *See* Respt's Answer Ex. L at 122–36, ECF No. 9-12. Using an age-regressed photograph of a fellow police officer, Detective Andrew Jicha created a profile for "Michael" on the Grindr dating app. The morning of June 10, 2016, he received a message and a picture from "D," a Grindr user who claimed to be twenty-three years old. *See id.*; *see also* Respt's Answer Ex. M, ECF No. 9-13 at 4–47. Posing as Michael, Jicha told D that he was only fifteen years old. Ex. M at 4. D nevertheless agreed to meet Michael at a Pizza Hut in Waukesha so they could engage in oral sex; D said he'd be driving a blue Honda Civic. *Id.* at 4–22. At 12:18 p.m., D asked Michael to meet him at the auto parts store across the street from the pizza chain.

Detective Jicha passed along his information—including the photo D provided—to his fellow officers, who conducted surveillance of the planned meet location. *See* Ex. L at 202–03; *see also* Respt's Answer Ex. I at 9–11, ECF No. 9-9. Shortly after 12:15, Gebhart pulled into the auto store parking lot driving a blue sedan. Ex. L at 203–06; Ex. I at 11–13. As Detective Cory Koeppel approached Gebhart's vehicle, he saw that Gebhart was using the

Grindr app on his cell phone. Ex. I at 11–15. Koeppel asked Gebhart to step out of his vehicle and hand over his phone; he complied. *Id.* at 15–19. Gebhart was arrested after he admitted he was there to meet a fifteen-year-old boy for oral sex. *Id.* at 19–25. The police did not read Gebhart the *Miranda* warnings at any point while talking to him in the auto store's parking lot.

Detective Koeppel later interviewed Gebhart at the police station. *See* Respt's Answer Ex. H, ECF No. 9-8 at 32–82. At the beginning of the interview, he read Gebhart his *Miranda* rights. *Id.* at 34. However, Koeppel didn't give Gebhart a chance to acknowledge that he understood his rights or to answer whether he agreed to speak with the police. And Gebhart didn't sign the *Miranda* form until after the interview was over. *See id.* at 80; *see also* Ex. I at 33–35. Gebhart eventually confessed to arranging to meet Mike, who he believed was a fifteen-year-old boy, for oral sex. Ex. H at 46–72. He also gave police consent to search his cell phone and provided his passcode to unlock it. *Id.* at 37–44. The only incriminating evidence the police found on Gebhart's cell phone was the Grindr conversation between D and Michael. *See* Ex. L at 104–18.

Prior to trial, Gebhart moved to suppress his statements to the police and the evidence found on his phone. *See* Respt's Answer Ex. H, ECF No. 9-8. The trial court initially granted the motion following an evidentiary hearing, concluding that the evidence was obtained in violation of *Miranda*. *See* Ex. I. The State of Wisconsin moved to reconsider the suppression of the evidence seized from Gebhart's phone. *See* Respt's Answer Ex. J, ECF No. 9-10. After two more hearings, the trial court changed its mind, finding that, despite the unintentional *Miranda* violation, Gebhart voluntarily consented to the search. *See id.* at 48–52. Gebhart filed

3

his own reconsideration motion, which the trial court denied after a fourth hearing. *See* Respt's Answer Ex. K, ECF No. 9-11.

The case proceeded to trial. *See* Ex. L. Detective David Feyen testified about the cell phone extraction, *id.* at 104–19; Detective Jicha testified about the Grindr conversation, *id.* at 122–201; and Detective Koeppel testified about his interactions with Gebhart in the parking lot and back at the police station, *id.* at 201–07. The State also introduced identical screenshots from Gebhart's and Jicha's phones showing the messages between D and Michael, which included two pictures D shared of himself. *See id.* at 113–16, 134–35; *see also* Ex. M. Gebhart did not testify or call any witnesses. Ex. L at 207. His defense was that there was reasonable doubt as to whether he actually believed Michael was fifteen, given that Grindr's terms and conditions prohibit the use of the app by minors. *See id.* at 97–103, 235–43. The jury found Gebhart guilty of using a computer to facilitate a child sex crime. *Id.* at 252. He was sentenced to five years of initial confinement and fifteen months of extended supervision. *See* Respt's Answer Ex. A, ECF No. 9-1. The trial court stayed the sentence pending an appeal.

Gebhart appealed his conviction, arguing that the trial court erred in denying his suppression motion. *See* Respt's Answer Ex. D, ECF No. 9-4; *see also* Respt's Answer Ex. E, ECF No. 9-5; Respt's' Answer Ex. F, ECF No. 9-6. The Wisconsin Court of Appeals assumed without deciding that the trial court erred in admitting the evidence found on Gebhart's phone; however, according to the court, any error in admitting that evidence was harmless. *See* Respt's Answer Ex. B at 3, ECF No. 9-2 (noting that a constitutional error is harmless if "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error"). The court noted that "the same evidence was properly admitted at trial via screenshots taken from Detective Jicha's phone." *Id.* Thus, "Gebhart would still have

4

been convicted of his crime absent the evidence found on his phone." *Id.* The Wisconsin Supreme Court summarily denied Gebhart's petition for review. *See* Respt's Answer Ex. C, ECF No. 9-3.

In January 2022, Gebhart filed a petition for a writ of habeas corpus in federal district court. *See* Pet., ECF No. 1. The matter was randomly assigned to me, and all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 2, 6. After the respondent filed her answer, *see* ECF No. 9, Gebhart filed a brief in support of his petition, *see* ECF No. 11; the respondent filed a brief opposing the petition, *see* ECF No. 13; and Gebhart filed a reply brief, *see* ECF No. 14.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Gebhart's petition. Under AEDPA, a prisoner in custody pursuant to a state-court judgment of conviction is entitled to federal habeas relief only if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). With respect to claims adjudicated on the merits in state court, a federal court can grant an application for a writ of habeas corpus "only if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in state court." *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010) (citing 28 U.S.C. § 2254(d)); *see also White v. Woodall*, 572 U.S. 415, 419 (2014).

"A legal principle is 'clearly established' within the meaning of [28 U.S.C. § 2254(d)(1)] only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (citing *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362,

5

412 (2000)). A state-court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13 (opinion of O'Connor, J.). Similarly, a state-court decision results in an "unreasonable application" of clearly established federal law when that court either "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

A writ of habeas corpus may not issue under the "unreasonable application" clause "simply because the federal court concludes that the state court erred. Rather, the applicant must demonstrate that the state court applied the Supreme Court's precedent in an objectively unreasonable manner." *Kubsch v. Neal*, 838 F.3d 845, 859 (7th Cir. 2016) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)). Thus, the petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citing *Williams*, 529 U.S. at 411). For purposes of federal habeas review, state-court factual determinations are entitled to "substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). To obtain relief under § 2254(d)(2), a petitioner must

6

demonstrate that the state-court decision "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)); *see also* 28 U.S.C. § 2254(e)(1). "The decision must be 'so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable.'" *Alston v. Smith*, 840 F.3d 363, 370 (7th Cir. 2016) (quoting *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)).

When applying the above standards, federal courts look to "the 'last reasoned state-court decision' to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (quoting *Johnson v. Williams,* 568 U.S. 289, 297 n.1 (2013)).

## DISCUSSION

Gebhart challenges only the police's warrantless search of his cell phone, claiming that he did not voluntarily consent to that search. Pet. 5; Petr's Br. 2–12. The respondent contends that *Stone v. Powell*, 428 U.S. 465 (1976), bars this court from reaching the merits of Gebhart's Fourth Amendment claim. Respt's Br. 10–16. Alternatively, the respondent maintains that, even if the court did address the merits, Gebhart would not be entitled to relief under § 2254. *Id.* at 16–21.

### I. *Stone v. Powell* Precludes the Court from Addressing the Merits of Gebhart's Claim

Federal habeas review is very limited with respect to Fourth Amendment claims that already have been raised in state court. In *Stone v. Powell*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428

7

U.S. at 494. The Seventh Circuit has interpreted *Stone* as barring federal habeas review of the merits of all Fourth Amendment claims, including where the state courts denied a pretrial suppression motion, if the petitioner has had a full and fair opportunity to litigate his claim in state court. *See, e.g.*, *Monroe v. Davis*, 712 F.3d 1106, 1112–13 (7th Cir. 2013); *Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005).

A petitioner has received a full and fair opportunity if "(1) he clearly apprised the state court of his Fourth Amendment claim along with the factual basis for that claim, (2) the state court carefully and thoroughly analyzed the facts, and (3) the court applied the proper constitutional case law to those facts." *Miranda*, 394 F.3d at 997. "A state court process that amounts to a sham," however, "would not constitute a full and fair hearing even though the petitioner had his day in court on the claim." *Monroe*, 712 F.3d at 1114 (citing *Cabrera v. Hinsley*, 324 F.3d 527, 531–32 (7th Cir. 2003); *Hampton v. Wyant*, 296 F.3d 560, 563–64 (7th Cir. 2002)). Similarly, a petitioner likely has not received a full and fair opportunity to litigate his claim if the state court committed an "egregious error" in resolving the Fourth Amendment issue. *Miranda*, 394 F.3d at 998 (quoting *Turentine v. Miller*, 80 F.3d 222, 226 (7th Cir. 1996)).

The state-court record demonstrates that Gebhart had a full and fair opportunity to litigate his Fourth Amendment claim. Prior to trial, Gebhart moved to suppress the evidence police found on his cell phone, arguing that the warrantless search violated the Fourth Amendment because he did not voluntarily consent to it. The trial court held four hearings on the motion, including two evidentiary hearings at which the detectives testified subject to cross-examination and two oral arguments. The parties also submitted briefs on the consent issue. Ultimately, the trial court determined that Gebhart's consent was voluntary. Gebhart

8

also appealed the denial of his suppression motion, and the Fourth Amendment issue was fully briefed to the Wisconsin Court of Appeals. The state appellate court found that any error in admitting the evidence seized from Gebhart's phone was harmless because the trial court properly admitted the exact same evidence taken from Detective Jicha's phone. And Gebhart raised the Fourth Amendment issue in his petition for review, which the Wisconsin Supreme Court summarily denied.

Although Gebhart concedes that the trial court took seriously his Fourth Amendment claim, he argues that he was not afforded a full and fair opportunity to adjudicate his claim before the Wisconsin Court of Appeals. He accuses the state appellate court of unexpectedly applying the harmless-error rule, an issue he says was essentially unbriefed by the parties. Petr's Reply 2–3.[2] The state-court record, however, belies his accusation. On appeal, the State argued (among other things) that, even if the trial court erroneously admitted the cell phone evidence, the error was harmless. *See* Ex. E at 31–32. Gebhart responded to that argument in his reply brief. *See* Ex. F at 9–10. Given that the issue was raised in the appellate briefs, Gebhart cannot now claim to have been blindsided by the court's application of harmless error.

Gebhart's real gripe is not surprise that the Wisconsin Court of Appeals applied the harmless-error rule, but rather disappointment the court relied on that doctrine to rule against him. The court, however, did not misapply harmless error to Gebhart's claim. *See Arizona v. Fulminante*, 499 U.S. 279, 307 (1991) (noting that the admission of evidence obtained in violation of the Fourth Amendment is subject to harmless-error review). Moreover, "a 'full

---

[2] Gebhart arguably waived any disagreement with the *Stone* procedural bar by not addressing it in his initial brief, even though the court noted the potential issue in its Rule 4 order, ECF No. 3, and the respondent raised the issue in her answer, ECF No. 9.

and fair opportunity' guarantees only 'the right to present one's case.'" *Watson v. Hulick*, 481 F.3d 537, 542 (7th Cir. 2007) (quoting *Cabrera*, 324 F.3d at 531–32). "[I]t does not guarantee a correct result." *Cabrera*, 324 F.3d at 532. The record here shows that Gebhart was afforded the *opportunity* to present his Fourth Amendment claim in state court, and he does not identify any "subversion" of the state-court hearing process. *See id.* at 531. *Stone* therefore precludes me from reaching the merits of the only claim raised in Gebhart's habeas petition.

## II. Gebhart Is Not Entitled to Habeas Relief on the Merits of His Claim

Even if I were to overlook the *Stone* procedural bar, Gebhart still would not be entitled to federal habeas relief on his Fourth Amendment claim. Gebhart maintains that the state trial court unreasonably determined that he voluntarily consented to the search of his cell phone. *See* Petr's Br. 6–12. However, the Wisconsin Court of Appeals also addressed Gebhart's Fourth Amendment claim, finding that any error in admitting evidence from Gebhart's cell phone was harmless because it was clear beyond a reasonable doubt that the jury would have still convicted him without that evidence. As Gebhart concedes in his reply brief, "a state court holding of harmless error beyond a reasonable doubt constitutes the adjudication of a claim on the merits for AEDPA purposes." Petr's Reply 2 (quoting *Jensen v. Clements*, 800 F.3d 892, 900 (7th Cir. 2015)). Thus, the focus for federal habeas review is the Wisconsin Court of Appeals' decision.

"The test for whether a federal constitutional error was harmless depends on the procedural posture of the case." *Jensen*, 800 F.3d at 901 (quoting *Davis v. Ayala*, 576 U.S. 257, 267 (2015)). "For habeas petitioners like [Gebhart], where the state court ruled that an error in admission was a harmless error, the petitioners are 'not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice.'" *Id.* "Under this test,

10

relief is proper only if the federal court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Davis*, 576 U.S. at 267–68). Reviewing courts "apply this actual prejudice standard regardless of whether the state appellate court determined that the error was harmless beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18 (1967)." *Czech v. Melvin*, 904 F.3d 570, 577 (7th Cir. 2018) (quoting *Jones v. Basinger*, 635 F.3d 1030, 1052 (7th Cir. 2011)); *see also Ayala*, 576 U.S. at 268–70 (explaining that the "actual prejudice" standard from *Brecht v. Abrahamson*, 507 U.S. 619 (1993), "subsumes the requirements that § 2254(d) imposes when a federal habeas petitioner contests a state court's determination that a constitutional error was harmless under *Chapman*"). Reviewing courts "employ a *de novo* review of the entire record, asking 'whether a properly instructed jury would have arrived at the same verdict, absent the error.'" *Armfield v. Nicklaus*, 985 F.3d 536, 543–44 (7th Cir. 2021) (quoting *Czech*, 904 F.3d at 577).

Gebhart does not mention the *Brecht* actual prejudice standard anywhere in his briefs. Rather, he argues more generally—and without citation to any on-point legal authority—that the Wisconsin Court of Appeals unreasonably applied the harmless-error rule. Gebhart says that the erroneous admission of the evidence impaired his due process right to present a defense of his choosing. According to Gebhart, if the evidence from his phone had been suppressed, he would have argued that the State failed to prove beyond a reasonable doubt that he was the one communicating on Grindr with the undercover police detective. *See* Petr's Br. 12–17.

I have no doubt that the jury would have reached the same verdict had the trial court suppressed the cell phone evidence and had Gebhart presented his proposed alternative

11

defense theory. As the Wisconsin Court of Appeals correctly noted, the same Grindr conversation found on Gebhart's phone was properly admitted at trial via Detective Jicha's phone. The screenshots from Jicha's phone included two photos D sent of his face to Michael; those photos clearly showed that D is (Donald) Gebhart, or his identical twin. Other evidence presented at trial left no room for Gebhart to argue that he was not the one messaging Jicha. D said that he was twenty-three-years old, the same age as Gebhart. And crucially, Gebhart parked in the auto store lot at precisely the moment D asked Michael to meet him for oral sex at the auto store parking lot.

Gebhart says his presence in the parking lot could have been a mere coincidence—he was at the wrong place at the wrong time. But he was also driving a blue sedan—the same color and type of vehicle D told Michael he'd be driving—*and looking at the Grindr app on his phone while he was waiting in the parking lot*. The odds all those factors lined up to wrongly implicate Gebhart are infinitesimally small; any doubt about Gebhart's guilt would have been unreasonable. Because Gebhart has failed to demonstrate that the admission of the evidence recovered from his cell phone had a substantial and injurious effect or influence in determining the jury's verdict, he is not entitled to relief under § 2254(d) on his Fourth Amendment claim.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Gebhart has not demonstrated that "that jurists of reason could disagree with the . . . court's resolution of his

12

Case 2:22-cv-00054-SCD   Filed 11/15/23   Page 12 of 13   Document 15

constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). I will therefore deny a certificate of appealability.

## CONCLUSION

For the reasons given above, the court **DENIES** the petition, ECF No. 1, and **DISMISSES** this action. The court also **DENIES** a certificate of appealability. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 15th day of November, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge